CHITTENDEN,
January,
1838.

JEDEDIAH TUTTLE *v*. CALEB GREEN.

When G. in pursuance of a contract with S., delivered S. wool to card, and cloth to dress for him, and S. was then, or soon after, in the employ of T. and did not carry on the business on his own account, and this was generally known;—Held, that G. was accountable to T. for the services thus performed by S., and as he had notice before the services were performed, and before any payments were made therefor, that S. was in the employ of T. he was not jusitfied in making any payments to S.

THIS was an action of book account, sued before a justice of the peace, and brought into the County Court by appeal, where judgment to account was rendered, and the case referred to an auditor, who reported;—

That the plaintiff, during the summer and fall of the year, 1833, carried on the business of wool carding and cloth dressing, at Swanton, where work was done for the defendant, as charged in the plaintiff's account, to the amount of $12,-98; which account commenced in June 1833, and ended in December 1833; that the plaintiff, in the month of June 1833, employed one Smith, to work in his shop, by the month, at a stipulated price, who worked there from that time until sometime in the month of December 1833, carding wool and dressing cloth; that for the purpose of accommodating customers in the vicinity where the defendant resided, in Swanton, customers left their wool and cloth at Smith's house, (some distance from the plaintiff's works,) which were carried from there to the plaintiff's shop, at the plaintiff's expense; that Smith, in addition to laboring in the shop, rendered services for the plaintiff in collecting work, carrying it from his house, and sometimes from customers' houses to the plaintiff's shop, and also paid one or two individuals for like services, for which Smith received an allowance in a settlement made between him and the plaintiff, in December 1833; that in the early part of the season of 1833, Smith was negotiating for clothing works at Highgate, but afterwards, went into the plaintiff's employ, as before stated; that Smith, sometime in June 1833, (whether before, or after he went into the plaintiff's employ, it did not appear,) called on the defendant, told him he had hired, or was about to hire, a shop in Highgate, and made a contract with the defendant to card his wool and dress his cloth (and, if

cash was paid) at a deduction from the usual prices; that without any further communication between Smith and the defendant, or any between the defendant and plaintiff, Smith received the wool and cloth, carried them to his house, and, with other wool and cloth of customers, they were carried to plaintiff's shop, and after the wool was carded, and cloth dressed, were carried back to Smith's house, in the usual course of plaintiff's business; that at the time Smith received the wool, the defendant did not know that the work was to be done at plaintiff's shop; but it was generally known in the neighborhood, that Smith was in plaintiff's employ, and was collecting work for him; that the defendant was soon after informed of the fact, by some one of his neighbors, who had conversed with the plaintiff on the subject, and was also informed that his (defendant's) wool had gone to plaintiff's shop; this notice to the defendant was before the cloth was delivered or dressed, and before any payment had been made to Smith, by the defendant; that Smith had no authority, from the plaintiff, to make contracts or to receive pay, except such as resulted from the nature of his employment, and the facts here stated. The auditor also reported;—

That the defendant presented an account against Smith, amounting to $11,76, which was for items delivered to Smith, and work done, under an agreement between Smith and the defendant, that they should be in payment of the wool carding and cloth dressing, which were charged, by the plaintiff, to the defendant; that there were charges for labor, in the defendant's account, which was performed on the premises of Smith, and for Smith's benefit; that it did not appear that any item of the defendant's account was for the use of the plaintiff; that this payment to Smith was without the plaintiff's knowledge or consent, nor had the plaintiff any knowledge of any contract, between Smith and the defendant, until the winter of 1834, when the plaintiff called on the defendant for a settlement, and refused to allow the defendant for the payments made to Smith; that in two instances, work was done by plaintiff, under an agreement between Smith and the plaintiff and customers, made before doing the work, that payment should be made in produce and wood, to Smith; that in another instance, some small sum,

paid by a customer to Smith, was allowed by the plaintiff; that in a settlement between Smith and the plaintiff, in the winter of 1833-4, the plaintiff, at Smith's request, delivered to Smith a few accounts against the plaintiff's customers, with whom Smith had dealings, receipted by plaintiff, for which Smith accounted in that settlement; that in one instance, plaintiff, when soliciting custom, said, that contracts made with Smith would be good, which saying came to the defendant's knowledge in July 1833; that one Hadley, who had cloth at the plaintiff's shop, was applied to, by Smith, for a small amount in provisions, which Smith promised to have allowed to Hadley, on plaintiff's account against Hadley, but Hadley refused to let Smith have any thing without an order from the plaintiff; that, on a second application, Hadley furnished Smith with articles amounting to nearly one dollar, under an agreement, that if the plaintiff would not allow it, Smith would pay the amount to Hadley; that soon after, the plaintiff delivered to Hadley his cloth, at Smith's house, and refused to allow the payment made to Smith, and told Hadley to pay to him (plaintiff,) and not to Smith; that Hadley, on the same day, related this conversation to the defendant, who replied, that he had sent his work to the plaintiff's shop, and should risk a payment to Smith; that, at this time, only eighty cents of the plaintiff's account against the defendant had accrued; that in the winter of 1833-4, the defendant called on Smith for a settlement, and Smith declined settling, until after he had settled with the plaintiff; that soon after, Smith and defendant, without examining the accounts on either side, agreed to consider these accounts balanced; that during all this time, Smith was not considered responsible, and that he left the country in May 1834.

Upon these facts, the auditor allowed the plaintiff's account, as charged. But if the Court should be of the opinion, that the contract, between Smith and the defendant, was binding on the plaintiff, then he found nothing due to either party.

The County Court rendered judgment for the defendant, and the plaintiff excepted.

*F. G. Hill,* for plaintiff.

*Smalley & Adams,* for defendant.

The opinion of the Court was delivered by

WILLIAMS, C. J.—This is an action on book, brought to recover for certain charges, made by the plaintiff, against the defendant, for carding wool and dressing cloth. The account commences in June, 1833, and ends in October of the same year. The defendant resists a recovery, on the ground that he made no contract with the plaintiff, but with one Smith, and that he has paid Smith therefor. It appears from the report of the auditor, that Smith was in the employment of the plaintiff, at monthly wages, from some time in June, 1833, to December of the same year, carding wool and dressing cloth, and that for the accommodation of the customers of the plaintiff, in the vicinity where the defendant resided, they were to leave their wool and cloth at the house of Smith, and receive them, when finished, at the same place. It does not, however, appear, that Smith, at any time during the period above named, was at work for himself, either in a shop of his own, or in the plaintiff's shop, neither is it to be inferred from the few instances in which Smith received pay, or made contracts, that he ever was permitted by the plaintiff to hold himself out as principal, or that he ever did so. The conversation Smith had with the defendant, when the agreement was made to do the work at cash prices, was probably at the time when Smith contemplated hiring a shop and setting up for himself. The auditor finds that this was in June, and was probably near the time that Smith went into the employment of the plaintiff. While Smith was in the employment of the plaintiff the wool was received by him. This, so far as the plaintiff is concerned, was a receipt of the wool by him to be carded. The work and labor were performed by the plaintiff, in his shop, and the defendant had the benefit of that labor. The defendant should have known what was known to all the people in that vicinity, that Smith was in the service of the plaintiff, and whatever he did, in that capacity, was for the plaintiff, who was entitled to the pay therefor. As to the time when the defendant was informed that Smith was at work for the plaintiff, an expression somewhat indefinite is used in the report. It is found that he had this knowledge *soon after* the wool was delivered, and he was also informed that his wool had gone to the plaintiff's shop. This was before the cloth was dressed, before it was delivered to be

dressed, and before the defendant had made any payments to Smith. After such notice, he would not be protected in making any payments to Smith. He cannot be in a better situation, than he would have been, if he had actually been indebted to Smith and the demand had been assigned to the plaintiff and notice given to him of the assignment. Any payments, made to Smith after such notice, would not have protected him against a recovery by the plaintiff.

In the present case, as the services charged in the plaintiff's account were actually performed by him, or his agent, as Smith had no authority to make any contracts, or receive pay, as the defendant had notice, before any, or but a small part, of the work was performed and before any payments were made to Smith, the plaintiff is entitled to recover for the amount of his charges, and the defendant cannot be allowed any part of his account against Smith, in payment of the same.

The judgment of the County Court is, therefore, reversed, and judgment must be entered for the plaintiff to recover the amount, as found by the auditor.